1
2
3
4
5
6           IN THE UNITED STATES DISTRICT COURT
7             FOR THE DISTRICT OF ARIZONA
8
9   Betty Marie Vanheesmkerck,                      No. CV-14-8148-PCT-PGR (ESW)
10                    Petitioner,                    **REPORT AND
                                                     RECOMMENDATION**
11  v.
12  Charles L. Ryan, et al.,
13                    Respondents.
14
15
16
17  **TO THE HONORABLE PAUL G. ROSENBLATT, SENIOR UNITED STATES**
18  **DISTRICT JUDGE:**
19          Pending before the Court is Petitioner Betty Marie Vanheesmkerck's
20  ("Petitioner") Amended Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus
21  (the "Amended Petition") (Doc. 4).  The Amended Petition raises three claims for relief.
22  On January 15, 2015, the Court dismissed Ground One and ordered Respondents to
23  answer Grounds Two and Three of the Amended Petition.  Respondents filed their
24  Answer (Doc. 14) on May 1, 2015.  Petitioner did not file a Reply.  The matter is deemed
25  ripe for consideration.
26          Although this habeas proceeding is timely, the undersigned finds that Ground Two
27  of the Amended Petition is procedurally defaulted and that Ground Three is without
28  merit.  It is therefore recommended that the Amended Petition be denied and dismissed

1   with prejudice.

2   ## I. BACKGROUND

3   On November 30, 2011, a Mohave County jury found Petitioner guilty on two

4   counts: (i) Possession of Dangerous Drugs for Sale and (ii) Possession of Drug

5   Paraphernalia.  (Doc. 14-1 at 5-8).  The trial court sentenced Petitioner to six years of

6   incarceration on the first count and nine months of incarceration on the second count.

7   (*Id*. at 10-12).  The sentences are to run concurrently.  (*Id*.).  The facts underlying

8   Petitioner's convictions relate to a police officer's stop of a vehicle in which Petitioner

9   was a passenger.  As recounted by the Arizona Court of Appeals:

> [Petitioner] testified that she and a friend had been
> waiting by the side of the highway in Fort Mohave for
> another friend to pick her up to drive her to Bullhead City. . . .
> [S]he and a friend accepted a ride from [a stranger who did
> not speak English] after he pointed to Laughlin on a map,
> indicating he needed directions.  Although [Petitioner] was
> initially waiting for a ride to Bullhead City to run an errand,
> she testified that she accepted a ride to Laughlin because she
> also needed to run an errand there before heading back to Fort
> Mohave to catch a ride to California later that day.

(*Id*. at 90).

> A police officer observed an altered vehicle registration
> sticker and stopped the truck in which [Petitioner] was a
> front-seat passenger.  During the traffic stop, the officer's
> narcotics canine alerted to the truck.  When the officer asked
> the driver if there was anything illegal in the truck, the driver
> paused and turned to look at [Petitioner] before answering.
> The officer testified that the driver understood and spoke
> broken English.
>
> After consenting to a search of the vehicle, the driver
> removed a black banker's-type bag from the truck and gave it
> to [Petitioner], who 'stuck it in her purse.'  With her consent,
> police subsequently searched [Petitioner's] purse, including
> the black bag.  They found a digital scale, $1,560 in cash, and
> methamphetamine valued at approximately $5,440.  Police
> also found a drug-sales ledger in the driver's side map pocket,
> methamphetamine valued at approximately $405 in a clear
> plastic baggie between the driver's seat and the truck's center

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

> console, and more methamphetamine with an approximate
> value of $264 in the pocket of a jacket in the backseat.

(*Id*. at 89-90).

After her convictions and sentencing, Petitioner timely appealed to the Arizona Court of Appeals.  (*Id*. at 19-53).  On December 18, 2012, the Arizona Court of Appeals affirmed Petitioner's convictions and sentences.  (*Id*. at 88-94).  Petitioner did not file a petition for review in the Arizona Supreme Court.

On January 7, 2013, Petitioner filed a notice of post-conviction relief ("PCR"). (*Id*. at 98-100).  The trial court appointed PCR counsel, who did not find any colorable claims for relief.  (*Id*. at 102, 114-16).  Petitioner filed a pro se PCR petition on October 24, 2013, which the trial court dismissed.  (*Id*. at 121-36, 138-39).  The Arizona Court of Appeals dismissed Petitioner's petition for review as untimely.  (*Id*. at 152).

On August 18, 2014, Petitioner filed a Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus (Doc. 1) (the "Original Petition"), which the Court dismissed with leave to amend (Doc. 3).  Petitioner filed the Amended Petition on October 20, 2014 (Doc. 4).  The Court dismissed Ground One of the Amended Petition and ordered Respondents to answer Grounds Two and Three (Doc. 6).  Respondents filed their Answer on May 1, 2015 (Doc. 14).

## II.  FEDERAL HABEAS LAW

Respondents do not argue, and the undersigned does not find, that this habeas proceeding is barred by the one-year statute of limitations set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 110 Stat. 1214.[1]  The following principles govern review of Petitioner's grounds for habeas relief.

### A.  Exhaustion-of-State-Remedies Doctrine

For over one hundred years, it has been settled that a "state prisoner must normally exhaust available state remedies before a writ of habeas corpus can be granted by the

---

[1] The one-year statute of limitations for a state prisoner to file a federal habeas petition is codified at 28 U.S.C. § 2244(d).

1   federal courts." *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981); *see also Picard v. Connor*,

2   404 U.S. 270, 275 (1971) ("It has been settled since *Ex parte Royall*, 117 U.S. 241, 6 S.

3   Ct. 734, 29 L.Ed. 868 (1886), that a state prisoner must normally exhaust available state

4   judicial remedies before a federal court will entertain his petition for habeas corpus.").

5   The rationale for the doctrine relates to the policy of federal-state comity. *Picard*, 404

6   U.S. at 275 (1971).  The comity policy is designed to give a state the initial opportunity to

7   review and correct alleged federal rights violations of its state prisoners. *Id.*  In the U.S.

8   Supreme Court's words, "it would be unseemly in our dual system of government for a

9   federal district court to upset a state court conviction without an opportunity to the state

10  courts to correct a constitutional violation." *Darr v. Burford*, 339 U.S. 200, 204 (1950);

11  *see also Reed v. Ross*, 468 U.S. 1, 11 (1984) ("[W]e have long recognized that in some

12  circumstances considerations of comity and concerns for the orderly administration of

13  criminal justice require a federal court to forgo the exercise of its habeas corpus power.")

14  (citations and internal quotation marks omitted).

15         The exhaustion doctrine is codified at 28 U.S.C. § 2254.  That statute provides that

16  a habeas petition may not be granted unless the petitioner has (i) "exhausted" the

17  available state court remedies; (ii) shown that there is an "absence of available State

18  corrective process"; or (iii) shown that "circumstances exist that render such process

19  ineffective to protect the rights of the applicant."  28 U.S.C. § 2254(b)(1).

20         Case law has clarified that in order to "exhaust" state court remedies, a petitioner's

21  federal claims must have been "fully and fairly presented" in state court. *Woods v.*

22  *Sinclair*, 764 F.3d 1109, 1129 (9th Cir. 2014).  To "fully and fairly present" a federal

23  claim, a petitioner must present both (i) the operative facts and (ii) the federal legal

24  theory on which his or her claim is based.  This test turns on whether a petitioner

25  "explicitly alerted" a state court that he or she was making a federal constitutional claim.

26  *Galvan v. Alaska Department of Corrections*, 397 F.3d 1198, 1204–05 (9th Cir. 2005).

27  "It is not enough that all the facts necessary to support the federal claim were before the

28  state courts or that a somewhat similar state law claim was made." *Anderson v. Harless*,

1    459 U.S. 4, 6 (1982) (citation omitted); *see also Lyons v. Crawford*, 232 F.3d 666, 668

2    (9th Cir. 2000), *as modified by* 247 F.3d 904 (9th Cir. 2001) (federal basis of a claim

3    must be "explicit either by citing federal law or the decisions of federal courts, even if the

4    federal basis is self-evident or the underlying claim would be decided under state law on

5    the same considerations that would control resolution of the claim on federal grounds").

6    **B.  Procedural Default Doctrine**

7         If a claim was presented in state court, and the court expressly invoked a state

8    procedural rule in denying relief, then the claim is procedurally defaulted in a federal

9    habeas proceeding.  *See, e.g., Zichko v. Idaho*, 247 F.3d 1015, 1021 (9th Cir. 2001).

10   Even if a claim was not presented in state court, a claim may be procedurally defaulted in

11   a federal habeas proceeding if the claim would now be barred in state court under the

12   state's procedural rules.  *See, e.g., Beaty v. Stewart*, 303 F.3d 975, 987 (9th Cir. 2002).

13        Similar to the rationale of the exhaustion doctrine, the procedural default doctrine

14   is rooted in the general principle that federal courts will not disturb state court judgments

15   based on adequate and independent state grounds.  *Dretke v. Haley*, 541 U.S. 386, 392

16   (2004).  A habeas petitioner who has failed to meet the state's procedural requirements

17   for presenting his or her federal claims has deprived the state courts of an opportunity to

18   address those claims in the first instance.  *Coleman v. Thompson*, 501 U.S. 722, 731-32

19   (1991).

20        As alluded to above, a procedural default determination requires a finding that the

21   relevant state procedural rule is an adequate and independent rule.  *See Id*. at 729-30.  An

22   adequate and independent state rule is clear, consistently applied, and well-established at

23   the time of a petitioner's purported default.  *Greenway v. Schriro*, 653 F.3d 790, 797-98

24   (9th Cir. 2011); s*ee also Calderon v. U.S. Dist. Court (Hayes)*, 103 F.3d 72, 74-75 (9th

25   Cir. 1996).  An independent state rule cannot be interwoven with federal law.  *See Ake v.

26   Oklahoma*, 470 U.S. 68, 75 (1985).  The ultimate burden of proving the adequacy of a

27   state procedural bar is on the state.  *Bennett v. Mueller*, 322 F.3d 573, 585-86 (9th Cir.

28   2003).  If the state meets its burden, a petitioner may overcome a procedural default by

1    proving one of two exceptions.

2         In the first exception, the petitioner must show cause for the default and actual

3    prejudice as a result of the alleged violation of federal law.  *Hurles v. Ryan*, 752 F.3d

4    768, 780 (9th Cir. 2014).  To demonstrate "cause," a petitioner must show that some

5    objective factor external to the petitioner impeded his or her efforts to comply with the

6    state's procedural rules.  *See Murray v. Carrier*, 477 U.S. 478, 488 (1986); *Robinson v.*

7    *Ignacio*, 360 F.3d 1044, 1052 (9th Cir. 2004).  To demonstrate "prejudice," the petitioner

8    must show that the alleged constitutional violation "worked to his actual and substantial

9    disadvantage, infecting his entire trial with error of constitutional dimensions."  *United*

10   *States v. Frady*, 456 U.S. 152, 170 (1982); *see also Carrier*, 477 U.S. at 494 ("Such a

11   showing of pervasive actual prejudice can hardly be thought to constitute anything other

12   than a showing that the prisoner was denied 'fundamental fairness' at trial.").

13        In the second exception, a petitioner must show that the failure to consider the

14   federal claim will result in a fundamental miscarriage of justice.  *Hurles*, 752 F.3d at 780.

15   This exception is rare and only applied in extraordinary cases.  *Wood v. Ryan*, 693 F.3d

16   1104, 1118 (9th Cir. 2012) (quoting *Schlup v. Delo*, 513 U.S. 298, 321 (1995)).  The

17   exception occurs where a "constitutional violation has probably resulted in the conviction

18   of one who is actually innocent of the offense that is the subject of the barred claim."

19   *Wood*, 693 F.3d at 1117 (quoting *Schlup*, 513 U.S. at 327).

20        **C.  Reviewing Habeas Claims on the Merits**

21        In reviewing the merits of a habeas petitioner's claims, AEDPA requires federal

22   courts to defer to the last reasoned state court decision.  *Woods v. Sinclair*, 764 F.3d

23   1109, 1120 (9th Cir. 2014); *Henry v. Ryan*, 720 F.3d 1073, 1078 (9th Cir. 2013).  To be

24   entitled to relief, a state prisoner must show that the state court's adjudication of his or

25   her claims either:

26            1.  resulted in a decision that was contrary to, or involved
                 an  unreasonable  application  of,  clearly  established
27               Federal law, as determined by the Supreme Court of
                 the United States; or
28

1
2
   2. resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

3   28 U.S.C. § 2254(d)(1), (2); *see also, e.g., Woods*, 764 F.3d at 1120; *Parker v. Matthews*,

4   132 S. Ct. 2148, 2151 (2010); *Harrington v. Richter*, 562 U.S. 86, 99 (2011).

5        As to relief under 28 U.S.C. § 2254(d)(1), "clearly established federal law" refers

6   to the holdings of the U.S. Supreme Court's decisions applicable at the time of the

7   relevant state court decision.  *Carey v. Musladin*, 549 U.S. 70, 74 (2006); *Thaler v.*

8   *Haynes*, 559 U.S. 43, 47 (2010).  A state court decision is "contrary to" such clearly

9   established federal law if the state court (i) "applies a rule that contradicts the governing

10  law set forth in [U.S. Supreme Court] cases" or (ii) "confronts a set of facts that are

11  materially indistinguishable from a decision of the [U.S. Supreme Court] and

12  nevertheless arrives at a result different from [U.S. Supreme Court] precedent."  *Price v.*

13  *Vincent*, 538 U.S. 634, 640 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06

14  (2000)).

15       As to relief under 28 U.S.C. § 2254(d)(2), factual determinations by state courts

16  are presumed correct unless the petitioner can show by clear and convincing evidence to

17  the contrary.  28 U.S.C. § 2254(e)(1); *see also Stanley v. Cullen*, 633 F.3d 852, 859 (9th

18  Cir. 2011).  A state court decision "based on a factual determination will not be

19  overturned on factual grounds unless objectively unreasonable in light of the evidence

20  presented in the state-court proceeding." *Davis v. Woodford,* 384 F.3d 628, 638 (9th

21  Cir.2004) (as amended) (internal quotation marks and citation omitted).

22              **III.  ANALYSIS OF THE AMENDED PETITION**

23       **A.  Ground Two**

24       In Ground Two of her Amended Petition, Petitioner states:[2]
                United States Constitution Amendments 5, 14; Arizona
25              Constitution Article 2, 24; Arizona Constitution, Article 2,
26              24.  Further that the error went to the foundation of the case,

27   _____

28       [2] Any claim that Petitioner's rights have been violated under the State of Arizona's Constitution is not cognizable in this federal habeas proceeding.

1
2
> taking from the defendant a right essential to her defense and resulting in the denial of a fair trial.  Henderson, 210 Ariz. 561, 115 P.2d at 607 (2005).

3 (Doc. 4 at 7).

4
> In the "Supporting Facts" section, Petitioner states:

5
6
7
8
9
10
11
> [Petitioner] was denied [her] right to due process and a fair trial.  [Petitioner] had no-one [sic] to testify on [her] behalf. The driver Caldera-Gurrola (co-defendant) was not [subpoenaed], and Zimmerman (co-defendant) was not called up to take the stand due to him not being able to stay Awake [sic] long enough and [Petitioner] had to sign a waiver for Officer Osborne whom was the Detaining Officer that was [subpoenaed] although was out of state during [her] trial so he could not appear.  [Petitioner] signed a waiver same day as [her] trial under duress for his absence.

12 (*Id.*).

13
14
15
Out of all the claims Petitioner raised in her Arizona state court proceedings, Ground Two is most similar to the following claim that Petitioner raised in her PCR petition:

16
17
18
19
20
> [Petitioner's] Sixth Amendment right to Confront her Accuser was violated when Trial Counsel refused to enforce subpoena issued to Bullhead City Police Officer Stephen Osborne guaranteeing his attendance at trial.
> Trial counsel's deliberate suppression of office Osborne's testimony as a . . . witness fundamentally violated [Petitioner's] Due Process who would have been instrumental in testifying to [Petitioner's] lack of culpability.

21
22
(Doc. 14-1 at 129).  The trial court construed the above claim as an ineffective assistance of counsel claim.  (*Id*. at 138-39).

23
24
25
26
27
28
After comparing Ground Two to the above PCR claim, the undersigned finds that Petitioner did not fairly present Ground Two in the Arizona state court proceedings. First, Ground Two references the Fifth Amendment, while the PCR claim references the Sixth Amendment.  Second, Ground Two challenges the nonappearance of Officer Osborne and Petitioner's two co-defendants as trial witnesses, while the PCR claim only challenges the nonappearance of Officer Osborne.

1        Third, Petitioner's PCR claim explicitly challenged the conduct of Petitioner's

2    trial counsel.  In support of her claim, Petitioner cited to *Strickland v. Washington*, 466

3    U.S. 668, 686 (1984) and stated that "Defendant has established a reasonable probability

4    that but for counsel's unprofessional errors the result of the proceeding would have been

5    different." (Doc. 14-1 at 136).  Ground Two, however, does not allege that Petitioner's

6    trial counsel was ineffective.  Rather, Petitioner states that Petitioner "was denied [her]

7    right to due process and a fair trial" because she "had no-one [sic] to testify on [her]

8    behalf." (Doc. 4 at 7).  Petitioner makes no mention of *Strickland* in support of Ground

9    Two.  Petitioner instead cites to *State v. Henderson*, 115 P.3d 601 (Ariz. 2005), a case

10   that discusses the fundamental error standard under Arizona law and does not involve an

11   ineffective assistance of counsel claim.[3]

12        Finally, with respect to Officer Osborne, Ground Two merely asserts that

13   Petitioner "signed a waiver same day as [her] trial under duress for [Officer Osborne's]

14   absence." (Doc. 4 at 7).  Yet the claim in the PCR petition centered on trial counsel's

15   alleged refusal to "enforce" the subpoena issued to Officer Osborne.  Petitioner alleged

16   that "[a]fter officer Osborne's Subpoena [sic] was served, but before trial, counsel for

17   [Petitioner] took it upon herself to excuse officer Osborne from having to testify. . . .

18   Counsel failed in her duties to postpone the trial, or in lieu, depose officer Osborne for

19   discovery." (Doc. 14-1 at 133).  Nowhere in the PCR petition does Petitioner mention

20   that she signed a waiver for Officer Osborne's absence, let alone that she signed the

21   waiver under duress.

22        After considering the significant differences between Ground Two and the PCR

23   claim, the undersigned concludes that Petitioner did not fairly present Ground Two to the

24   Arizona state court.  *See Rose v. Palmateer*, 395 F.3d 1108, 1111 (2005) ("petitioners

25

26        [3] In *Henderson*, the Arizona Supreme Court determined that an Arizona court

27   should consider a claim based on *Blakely v. Washington*, 542 U.S. 296 (2004) under the
fundamental error standard when the defendant failed to raise the issue at trial.
*Henderson*, 115 P.3d at 603.  The U.S. Supreme Court in *Blakely* affirmed the rule that

28   "any fact that increases the penalty for a crime beyond the prescribed statutory maximum
must be submitted to a jury, and proved beyond a reasonable doubt." 542 U.S. at 301.

1   must plead their claims with considerable specificity before the state courts in order to

2   satisfy the exhaustion requirement"). The Arizona state court did not have a full and fair

3   opportunity to address Petitioner's claims in Ground Two that her federal constitutional

4   rights to due process and a fair trial were violated when (i) she signed under duress a

5   waiver regarding Officer Osborne's attendance at trial and (ii) her two co-defendants did

6   not appear as trial witnesses. Petitioner therefore has failed to exhaust her state remedies

7   with respect to Ground Two. However, because Rule 32 of the Arizona Rules of

8   Criminal Procedure would preclude relief on Ground Two if Petitioner returned to state

9   court, Ground Two is technically exhausted and deemed procedurally defaulted.[4] *Beaty*,

10  303 F.3d at 987 (a claim is procedurally defaulted "if the petitioner failed to exhaust state

11  remedies and the court to which the petitioner would be required to present his claims in

12  order to meet the requirement would now find the claims procedurally barred") (quoting

13  *Coleman*, 501 U.S. at 735 n.1)).

14       Even if the Court finds that Ground Two was fairly presented in Petitioner's PCR

15  petition, dismissal of Ground Two remains warranted under the procedural default

16  doctrine. On November 25, 2013, the trial court dismissed Petitioner's PCR petition.

17  (Doc. 14-1 at 138-39). Pursuant to Rule 32.9(c) of the Arizona Rules of Criminal

18  Procedure, Petitioner had thirty days to petition the Arizona Court of Appeals for review.

19  Petitioner, however, did not file a petition for review until January 22, 2014—almost

20  sixty days past the deadline. On February 8, 2014, the Arizona Court of Appeals

21  dismissed the petition for review as untimely pursuant to Rule 32.9(c) of the Arizona

22  Rules of Criminal Procedure. (*Id*. at 152). The Court of Appeals explained that whether

23  Petitioner was without fault for the untimely filing was a question of fact appropriately

24

25       [4] Rule 32.2 of the Arizona Rules of Criminal Procedure precludes a defendant
    from post-conviction relief based upon any ground (i) raisable on direct appeal under
26  Rule 31 or on post-trial motion under Rule 24; (ii) finally adjudicated on the merits on the
    appeal or in any previous collateral proceedings; or (iii) that has been waived at trial, on
27  appeal, or in any previous collateral proceedings. In addition, Ground Two would be
    precluded in a post-conviction relief proceeding as untimely under Rule 32.4 of the
28  Arizona Rules of Criminal Procedure. *See O'Sullivan v. Boerkel*, 526 U.S. 838, 848
    (1999) (where habeas petitioner was time-barred from presenting his claims in state
    court, claims were procedurally defaulted).

1    addressed to the trial court.   (*Id*.). Petitioner did not seek relief in the trial court.

2    Petitioner's failure to comply with the time requirements set forth in Rule 32.9(c) for

3    filing a petition for review is an independent and adequate state law ground to support the

4    Arizona Court of Appeals' judgment.[5]   Accordingly, Petitioner's Ground Two claim is

5    procedurally defaulted.

6         For the above reasons, the undersigned recommends that the Court dismiss

7    Ground Two.

8         **B.   Petitioner's Procedural Default is Not Excused**

9         The merits of a habeas petitioner's procedurally defaulted claim are to be reviewed

10   if the petitioner (i) shows cause for the default and actual prejudice as a result of the

11   alleged violation of federal law or (ii) shows that the failure to consider the federal claim

12   will result in a fundamental miscarriage of justice.  *McKinney v. Ryan*, 730 F.3d 903, 913

13   (9th Cir. 2013).

14        Petitioner offers no reason to excuse the procedural default of Ground Two.

15   Although Respondents thoroughly briefed the procedural default issue in their Answer

16   (Doc. 14 at 7-14), Petitioner has chosen not to file a reply.  The undersigned recommends

17   that the Court not excuse Petitioner's procedural default of Ground Two.

18        **C.  Ground Three**

19        Ground Three of the Amended Petition alleges that Petitioner's rights to due

20   process and a fair trial under the Fifth and Fourteenth Amendments were violated by

21   alleged prosecutorial misconduct.[6]  (Doc. 4 at 8).  Petitioner asserts that the prosecutor

22

23        [5] Rule 32.9(c) is "independent" because it is not interwoven with federal law.  *See LaCross v. Kernan*, 244 F.3d 702, 704 (9th Cir. 2001) (to be independent, "the state law basis for the decision must not be interwoven with federal law").   Rule 32.9(c) is
24   "adequate" because it is clear, firmly established, and consistently applied.  *See, e.g., State v. Carriger*, 692 P.2d 991, 995 (Ariz. 1984) (en banc) (observing that petitioners
25   must strictly comply with Rule 32 or be denied relief); *State v. Gause*, 541 P.2d 396, 397 (Ariz. 1975) (en banc) (dismissing purported appeal where defendant did not comply
26   with the requirements of Rule 32.9 and gave no valid reason for the failure); *State v. French*, 7 P.3d 128, 131 (Ariz. Ct. App. 2000) (summarily rejecting claims for failure to
27   comply with Rule 32.9).

28        [6] Petitioner's Ground Three also references the Arizona Constitution.  To reiterate, any claim that Petitioner's rights under Arizona state law were violated is not cognizable

1
2
3
4
5

"argu[ed] facts that were not in evidence but that went to the heart of [Petitioner's] defense and likely impacted the verdict, By [sic] saying that [Petitioner] was acting in concert with [the driver] when [the driver] was not at my trial to testify on Anything [sic] being implied about him to confirm to Anything [sic] the prosecutor was speculating to the jury."  (*Id*.).[7]

6
7
8

On direct appeal, Petitioner alleged three claims of prosecutorial misconduct. Liberally construing the Amended Petition, the undersigned finds that Petitioner fairly presented Ground Three in the first claim of prosecutorial misconduct on direct appeal:[8]

9
10
11

> Prosecutorial misconduct will require reversal if the appellant is denied federal and state due process and a fair trial due to the actions of the prosecutor.   United States Constitution, Amendments 5, 14 . . . .

(Doc. 14-1 at 39).

12
13

> . . . .
> The evidence showed that the driver looked at her when

14

in this proceeding.

15
16
17
18
19
20

[7] In addition, Petitioner states that "[t]here was also a drug ledger found in [the driver's] truck written in Spanish that belonged to him that was never mentioned or there for evidence during my trial."  (Doc. 4 at 8).  The purpose of this statement is unclear. None of Petitioner's prosecutorial misconduct claims on direct appeal pertained to the ledger.  Vague and conclusory allegations do not warrant habeas relief.  *See Jones v. Gomez*, 66 F.3d 199, 204 (9th Cir. 1995).  Moreover, Petitioner's statement is incorrect. The ledger was admitted into evidence as Exhibit 2.  (Doc. 14-2 at 153).  Petitioner's trial counsel established that the ledger was written in Spanish.  (*Id*. at 162-63).  Petitioner's trial counsel also remarked during her closing argument that the ledger was written in Spanish.  (Doc. 14-3 at 114).

21
22
23
24
25
26
27
28

[8] The other two prosecutorial misconduct claims alleged that: (i) the prosecutor misstated Petitioner's testimony and (ii) the prosecutor improperly argued that Petitioner's story is not believable because "since 9/11, the last 10 years, you don't take bags from other people."  (Doc. 14-1 at 44-48).  Ground Three contains no references to the prosecutor's characterization of Petitioner's testimony or the prosecutor's remark about taking bags from strangers after 9/11.  Nor does Ground Three attempt to incorporate by reference Petitioner's Opening Brief on direct appeal.  The undersigned therefore does not construe Ground Three as containing the two other claims of prosecutorial misconduct raised on direct appeal.  *See* Rule 2(c) of the Rules Governing Section 2254 Proceedings (a habeas petition must "specify all the grounds for relief that are available to the petitioner" and "state facts supporting each ground"); *Smith v. Swarthout*, 742 F.3d 885, 893 n.3 (9th Cir. 2014) (recognizing that a court must construe a habeas petition liberally, but declining to consider an issue not raised in the petition). Nevertheless, the undersigned does not find that the Arizona Court of Appeals' denial of the other two prosecutorial misconduct claims was contrary to or an unreasonable application of clearly established federal law or based on an unreasonable determination of the facts.

1
2
3
4
5
6
7
8

> asked for consent to search, and handed her the bag.  But the prosecutor argued that [Petitioner] must have known about the methamphetamine and been acting in concert with the driver Caldera-Gurrola because Caldera-Gurrola would never have allowed them into the car as strangers because of the amount of methamphetamine that he had in the car and the risk that they may have turned him into police. . . .
>
> Yet, the state offered absolutely no evidence to support this theory that a drug dealer would never have let someone in their truck containing methamphetamine during the evidence phase of trial.

(*Id*. at 42-43).

9
10
11

The last reasoned state court decision addressing Petitioner's claim in Ground Three is the December 18, 2012 Arizona Court of Appeals ruling affirming Petitioner's convictions and sentences.  The Court explained that:

12
13
14
15
16

> We find no prosecutorial misconduct, much less misconduct so egregious and persistent that it permeated the entire atmosphere of the trial or deprived [Petitioner] of a fair trial     . . . . [T]he argument that a diver transporting more than $5,000 worth of methamphetamine would normally not give rides to strangers was simply an argument relying on common sense.

17

(*Id*. at 93).

18
19
20
21
22

To succeed on Ground Three, Petitioner must show that the Arizona Court of Appeals' decision is (i) contrary to, or involved an unreasonable application of, clearly established federal law (as determined by the U.S. Supreme Court) or (ii) based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.  28 U.S.C. § 2254(d)(1), (2).

23
24
25
26
27
28

The clearly established federal law applicable to a claim of prosecutorial misconduct is "the narrow one of due process, and not the broad exercise of supervisory power."  *Darden v. Wainwright*, 477 U.S. 168, 181 (1986).  "[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor."  *Smith v. Phillips*, 455 U.S. 209, 219 (1982).  Thus, to prevail on a prosecutorial misconduct claim, a petitioner must

1   show that not only were the prosecutor's actions improper, but that the actions "so

2   infected the trial with unfairness as to make the resulting conviction a denial of due

3   process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974); *Darden*, 477 U.S. at 181

4   (it "is not enough that the prosecutor['s] remarks were undesirable or even universally

5   condemned")  (internal quotation marks and citation omitted).

6          "Counsel are given latitude in the presentation of their closing arguments, and

7   courts must allow the prosecution to strike hard blows based on the evidence presented

8   and all reasonable inferences therefrom."  *Ceja v. Stewart*, 97 F.3d 1246, 1253 (9th Cir.

9   1996) (internal quotation marks and citation omitted).    In determining whether a

10  prosecutor's closing remarks violated a defendant's due process rights, a reviewing court

11  "must consider the probable effect of the prosecutor's [comments] on the jury's ability to

12  judge the evidence fairly."    *United States v. Young*, 470 U.S. 1, 12 (1985).    A

13  prosecutor's remarks must be evaluated in the context of the entire trial, as well as the

14  context in which they were made.  *See Darden*, 477 U.S. 179; *Boyde v. California*, 494

15  U.S 370, 385 (1990); *United States v. Robinson*, 485 U.S. 25, 33-34 (1988); *Williams v.*

16  *Borg*, 139 F.3d 737, 745 (9th Cir. 1998).  As discussed in *Darden*, additional relevant

17  factors include: (i) whether the prosecutor's comments manipulated or misstated the

18  evidence; (ii) the trial court's jury instructions; (iii) the weight of the evidence against the

19  defendant; and (iv) whether the prosecutor's remarks were an "invited response."  477

20  U.S. at 181-82.  "[I]f the prosecutor's remarks were 'invited,' and did no more than

21  respond substantially in order to 'right the scale,' such comments would not warrant

22  reversing a conviction." *Young*, 470 U.S. at 13.

23         Here, the prosecutor's opening statement did not discuss whether or not Petitioner

24  knew the driver.  (Doc. 14-2 at 126-29).  Petitioner's trial counsel began her opening

25  statement by saying "What the state failed to tell you is that [Petitioner] had just met [the

26  driver] 20 minutes prior to being stopped by Officer Menard."  (*Id.* at 130).  Thus,

27  Petitioner's trial counsel "invited" the following closing remarks made by the prosecutor:

28                      When [the driver] grabbed the black nylon bag from the

- 14 -

1
2
3
4

         F-150 before the search, he passes that bag to [Petitioner] and that bag gets put in her purse.  And the place where she exercises control – and again, this is knowing control over this $5,550 of meth that's in that black bag . . . I mean these folks are working together, right?

5

(Doc. 14-3 at 104).

6
7
8

        . . . .
         There is a team effort that is going on here.  These people are accomplices; they are working together.  These are not good guys. . . .

9

(*Id*. at 110).

10
11
12
13
14
15

        . . . .
         I mean, I guess to me, if you're looking at this, these people are working together, and you don't have a good guy on board; right?  You don't have a nun.  Why not?  Why don't you have a person who know[s] nothing about what's going on when you're carrying around [$]5,000 worth of methamphetamine?  Because you're risking your [$]5,000 worth of methamphetamine, because what is the reaction of the person who's not involved, whose not an accomplice?

16

(*Id*. at 111).

17
18

     Petitioner's trial counsel then delivered her closing argument and controverted the prosecutor's remarks:

19
20

        [Petitioner] is innocent, because she is not a drug dealer, and she didn't know that [the driver] had drugs in the vehicle and on his person.

21

(*Id*. at 113).

22
23
24
25
26
27

        . . . .
        [Petitioner] allowed [the driver], "**a guy she didn't even know**, give her a bag.  That's because never, in her wildest dreams, did she ever think that he would be giving her something illegal, right in front of three police officers. . . . [A]nd I think it's actually a little absurd to think that if she knew there was like a lot of cash, and meth, and scales, and . . . illegal items in there, that she would say yeah, okay, I will take that bag.

28

(*Id*. at 115) (emphasis added).

- 15 -

. . . .

Now, it's not as if [the driver] handed [Petitioner] a gun and said here, take this, or even maybe a bloody knife, or even a regular knife for that matter, or bong, or syringe, something like that illegal.  He handed her a solid black bag, right in front of other officers.

Now, I would say if I walked up to any one of you with a pen and said here, at least one of you would take it.  Okay, that's because our instincts are to take something that somebody's giving us.

(*Id*. at 117).

After reviewing the prosecutor's remarks in context, the undersigned does not find that the Arizona Court of Appeals' denial of the claim contained in Ground Three warrants habeas relief.  Petitioner's trial counsel invited the remarks by asserting in her opening statement that Petitioner did not know the driver.  The prosecutor's responsive remarks did no more than "right the scale."  *Young*, 470 U.S. at 13.  Moreover, Petitioner's trial counsel disputed the prosecutor's remarks in her closing argument, thus counter-balancing the scale in Petitioner's favor.  Further, the other factors considered in *Darden* support the Arizona Court of Appeals' decision.  First, the trial court twice instructed the jury that what the lawyers say in their opening statements and closing arguments is not evidence.  (Doc. 14-2 at 112; Doc. 14-3 at 77).  The trial court also twice instructed the jury that they should not be influenced by sympathy or prejudice. (Doc. 14-2 at 110-11; Doc. 14-3 at 76).  *See Sassounian v. Roe*, 230 F.3d 1097, 1106-07 (9th Cir. 2000) (isolated comments by a prosecutor may be cured by jury instructions). Petitioner has not offered anything to rebut the presumption that the jury failed to follow the trial court's instructions.

Second, the undersigned does not find that the prosecutor misstated or manipulated the evidence by asserting that Petitioner was working in concert with the driver.  As noted by the Arizona Court of Appeals, "the argument that a driver transporting more than $5,000 worth of methamphetamine would normally not give rides to strangers was simply an argument relying on common sense.  *See United States v.*

1    *Quilca-Carpio*, 118 F.3d 719, 722 (11th Cir. 1997).” (Doc. 14-1 at 93-94).  Finally, the

2    undersigned notes that the weight of evidence against Petitioner was great.  Petitioner

3    admitted that she accepted and placed the black bag in her purse and there was sufficient

4    circumstantial evidence for a jury to find that Petitioner knew of the bag's contents.

5          For the above reasons, the undersigned concludes that the Arizona Court of

6    Appeals' denial of Petitioner's claim in Ground Three (i) was neither contrary to nor an

7    unreasonable application of clearly established federal law or (ii) based on an

8    unreasonable determination of the facts.  The undersigned thus recommends that the

9    Court dismiss Ground Three.

10                              **IV.  CONCLUSION**

11         Based on the foregoing reasons, the undersigned recommends that the Court deny

12   and dismiss the Amended Petition (Doc. 4) with prejudice.

13         Accordingly,

14         **IT IS RECOMMENDED** that the Amended Petition (Doc. 4) be **DENIED** and

15   **DISMISSED WITH PREJUDICE**.

16         **IT IS FURTHER RECOMMENDED** that a certificate of appealability and leave

17   to proceed in forma pauperis on appeal be denied because dismissal of Ground Two is

18   justified by a plain procedural bar and Petitioner has not made a substantial showing of

19   the denial of a constitutional right in her remaining claim for relief.

20         This recommendation is not an order that is immediately appealable to the Ninth

21   Circuit Court of Appeals.  Any notice of appeal pursuant to Fed. R. App. P. 4(a)(1)

22   should not be filed until entry of the District Court's judgment. The parties shall have

23   fourteen days from the date of service of a copy of this recommendation within which to

24   file specific written objections with the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P.

25   6, 72. Thereafter, the parties have fourteen days within which to file a response to the

26   objections. Failure to file timely objections to the Magistrate Judge's Report and

27   Recommendation may result in the acceptance of the Report and Recommendation by the

28

1   District Court without further review. *See United States v. Reyna-Tapia*, 328 F.3d 1114,

2   1121 (9th Cir. 2003). Failure to file timely objections to any factual determinations of the

3   Magistrate Judge may be considered a waiver of a party's right to appellate review of the

4   findings of fact in an order or judgment entered pursuant to the Magistrate Judge's

5   recommendation.  *See* Fed. R. Civ. P. 72.

6        Dated this 23rd day of November, 2015.

7

8

9                                         Eileen S. Willett
                                        United States Magistrate Judge
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28